Richard M. LEVIN, Respondent,

v.

AETNA CASUALTY AND SURETY COMPANY, Appellant.

No. C0-90-1697.

Court of Appeals of Minnesota.

Jan. 22, 1991.

Review Denied March 27, 1991.

James R. Gray, Gilmore, Aafedt, Forde, Anderson & Gray, Minneapolis, for appellant.

James P. Larkin, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

Considered and decided by FOLEY, P.J., and NORTON and SHORT, JJ.

## OPINION

NORTON, Judge.

Insurer appeals from an entry of summary judgment. Respondent, Richard Levin (Claimant), sought a declaratory judgment establishing the limits of underinsured motorist coverage (UIM) under a policy issued by appellant, Aetna Casualty and Surety Company (Insurer), to respondent's employer (Insured). The trial court entered summary judgment for Claimant declaring that Insurer's liability limit for UIM coverage was $3.3 million. We affirm.

## FACTS

Claimant was injured in an automobile accident on March 7, 1983 while driving Insured's car during the course of his employment. All parties agree that Claimant was covered under the policy; they disagree on the amount of available coverage.

Because Insured was part of a nationwide corporation, the automobile coverage provided by the policy varied from state to state to comply with local law. The premium charged Insured was based on Insured's payroll; no separate premium was charged per vehicle. At the time of the accident, Insured had 66 vehicles covered by the policy.

The policy was a lengthy document, consisting of a declaration page, an endorsement index and attached endorsements. Although the declaration page did not list underinsured motorist coverage, the trial court ruled that the definition of uninsured motorist included underinsured motorist and found coverage under that provision. The declaration page listed uninsured motorist coverage and referred to endorsement 33 for the liability limit; endorsement 33 listed $50,000 as the limit in Minnesota. Endorsement 34 listed the general terms and definition of uninsured motorist coverage. Endorsement 34 indicated the following liability limit:

> Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

Following Endorsement 34 are several endorsements that apply to different states. Endorsement 47 is titled Changes in Uninsured Motorists Insurance and applies to Minnesota. The limit of liability in Endorsement 47 says:

> Regardless of the number of insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORIST INSURANCE shown in the declarations. If there is more than one covered auto, our limit of liability for any one accident is the sum of the limits applicable to each covered auto.

An agent of Insured submitted an affidavit stating that it was Insured's intent to provide only the minimum UM and UIM coverage required by law, that Insured intended to provide additional coverage to employees through workers' compensation, and that Insured intended to avoid duplicating coverage. An agent of Insurer submitted an affidavit evincing the same intent. At the time of the accident, UIM coverage was not required in Minnesota. However, if UIM coverage was provided, $50,000 per accident was the minimum statutory coverage.

The specific liability limit language of Endorsement 47 was included as the result of negotiations between Insurance Services Office (ISO) and the Minnesota Commerce Department. ISO procures approval of insurance policy language from states and provides copyrighted endorsements to in-

surance companies. Insurer was a subscriber of ISO's service. The Minnesota Commerce Department required the elimination of anti-stacking language contained in the general Endorsement 34. ISO submitted the language that was ultimately approved and included as Endorsement 47. ISO sent a notice of the change to Insurer.

The trial court ruled that the policy language was clear and unambiguous and that the policy provided sum of the limits UIM coverage. The trial court found that Insured had 66 covered vehicles at the time, each covered to $50,000. The court concluded that Insurer's liability limit available to Claimant was $3.3 million.

## ISSUE

Did the trial court err by refusing to apply the doctrine of reasonable expectations to benefit Insured?

## ANALYSIS

To reverse an entry of summary judgment, an appellate court must determine that there was an issue of material fact or that the trial court misapplied the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The interpretation of the language of an insurance contract is a question of law. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978).

■ The trial court ruled that the doctrine of reasonable expectations did not apply to this case because the policy language was neither ambiguous nor a hidden exclusion. Insurer relies on *Curtis v. Home Ins. Co.,* 392 N.W.2d 44 (Minn.App. 1986) and argues that the court erred by concluding that the disputed language was unambiguous. In *Curtis,* this court held that the limit of liability for UIM coverage was ambiguous. The policy said:

> *Regardless of the number of covered autos,* [emphasis added] insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNDERINSURED MOTORISTS INSURANCE shown in this endorsement. *If there is more than one covered auto our limit of liability for any one accident is the sum of the limits*

*applicable to each covered auto* [emphasis in original].

*Id.* at 45.

> Whether the language of an insurance policy is ambiguous is a question of law * * *. If the language of the policy is reasonably subject to more than one interpretation there is ambiguity.

*Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 34 (Minn.1979). In *Curtis,* the two sentences are inconsistent and therefore ambiguous because the first says "Regardless of the number of covered autos" and the second says "If there is more than one covered auto." However, the liability limit language of Endorsement 47 does not contain the same contradictory language as in *Curtis.* Instead, it says:

> Regardless of the number of insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations. If there is more than one covered auto, our limit of liability for any one accident is the sum of the limits applicable to each covered auto.

From the plain reading of the language, sum of the limits coverage applies only when there is more than one covered auto.

■ This situation can also be distinguished from the ambiguity found in *Rusthoven v. Commercial Standard Ins. Co.,* 387 N.W.2d 642, 644–45 (Minn.1986). There, the supreme court held that a policy was ambiguous because two separate endorsements contained irreconcilably inconsistent language. *Id.* at 644. The ambiguous endorsements in *Rusthoven* contained the same language provided by ISO in the present case at Endorsements 34 and 47. However, in the present case, the endorsements are not inconsistent and can be reconciled because insured was a national corporation. The plain reading of this policy means Endorsement 34 is the default limit of liability and applies in all cases not covered by subsequent endorsements. Endorsement 47, by its own terms, applies to Minnesota and changes the liability limit from Endorsement 34 when applied to Minnesota cases.

The trial court correctly concluded that the language of the liability limit was not ambiguous. It was not internally inconsistent as the two contradictory sentences were in *Curtis;* nor were the endorsements inconsistent as they were in *Rusthoven.*

Appellant argues that the trial court erred by not applying the doctrine of reasonable expectations because the language was ambiguous and the rule from *Rusthoven* must apply. When construing ambiguous language, "The result of such a construction * * * must not be beyond the reasonable expectations of the insured." *Rusthoven,* 387 N.W.2d at 645. However, because the language in this policy was not ambiguous and appellant made no showing of a hidden exclusion or other special circumstances, the trial court correctly refused to apply the doctrine of reasonable expectations. *See Hubred v. Control Data Corp.,* 442 N.W.2d 308, 311 (Minn.1989) ("[N]othing in our opinion in *Atwater* [*Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271 (Minn. 1985)] suggests that the doctrine of reasonable-expectations is not to be applied except in the presence of peculiar circumstances such as ambiguity or a hidden exclusion."); *Centennial Ins. Co. v. Zylberberg,* 422 N.W.2d 18, 23 (Minn.App.1988) ("Our decisions have read *Atwater* to require a finding of either ambiguity or a hidden major exclusion prior to consideration of reasonable expectations of the insured.").

Respondent argues that the trial court erred by refusing to find UIM coverage under Endorsement 48. Because we hold that the trial court was correct by construing the policy to provide UIM sum of the limits coverage under Endorsements 34 and 47, we decline to consider whether UIM coverage was also provided under Endorsement 48.

### DECISION

We hold that the limit of liability language was unambiguous and resulted in sum of the limits coverage.

Affirmed.